624 F.2d 831
 104 L.R.R.M. (BNA) 2965, 89 Lab.Cas. P 12,123
 MISCELLANEOUS DRIVERS AND HELPERS UNION, LOCAL NO. 610,
affiliated with International Brotherhood of
Teamsters, Chauffeurs, Warehousemen and
Helpers of America, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
O'Sullivan, Muckle, Kron Mortuary, Intervenor-Respondent.
 No. 79-1954.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 10, 1980.
Decided June 17, 1980.
 
 Earl B. Wilburn, Wiley, Craig, Armbruster, Wilbur & Mills, St. Louis, Mo., filed appendix and brief for petitioner.
 Carol A. DeDeo and Ralph C. Simpson, Attys., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for respondent.
 Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and HANSON, District Judge.*
 PER CURIAM.
 
 
 1
 International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (union) petition for review of a decision and order of the National Labor Relations Board (NLRB). The NLRB found that the intervenor-respondent, O'Sullivan, Muckle, Kron Mortuary (O'Sullivan), was not a joint employer of funeral vehicle drivers. Therefore, O'Sullivan's refusal to sign a collective bargaining agreement did not violate section 8(a)(5) of the National Labor Relations Act and the complaint was dismissed.
 
 
 2
 Intervenor-respondent, O'Sullivan, operates a funeral home and employs embalmers and other general employees. However, O'Sullivan has never employed permanent funeral vehicle drivers but instead obtains these services from other mortuaries.
 
 
 3
 O'Sullivan is also a member of The Funeral Directors of Greater St. Louis, Inc. (the association). The association has for several years negotiated and entered into collective bargaining agreements with two units of employees, embalmers and drivers. O'Sullivan has in the past become an individual signatory to agreements involving both employee units. But upon the reopening of negotiations in the spring of 1978, O'Sullivan refused to become an individual signatory to the contract applicable to drivers. Past and present collective bargaining agreements have required that signatories contact service companies, in this case Albert H. Hoppe, Inc. (Hoppe), for funeral vehicle services prior to contacting other mortuaries. O'Sullivan now uses both association and nonassociation funeral vehicle services.
 
 
 4
 O'Sullivan obtains vehicles and drivers from Hoppe by placing an order by phone. Vehicles and drivers are then dispatched by Hoppe to the location specified by the mortuary. Duties of the drivers depend on the particular service provided, including driving hearses, flower wagons, body pickup vans or other vehicles. Duties may vary somewhat depending on the desires of the mortuary's funeral director or family members. Hoppe pays its drivers a weekly salary and bills the mortuary for a flat amount for the vehicle and driver. Hoppe is solely responsible for the hiring, assignment, disciplining and discharging of its drivers. There is no financial management interchange between O'Sullivan and Hoppe.
 
 
 5
 The union filed a complaint with the NLRB regarding O'Sullivan's refusal to sign the collective bargaining agreement. The Administrative Law Judge (ALJ) found that O'Sullivan was a joint employer of the drivers and therefore was obligated to execute the collective bargaining agreement reached by the multiemployer bargaining unit. However, upon review of the ALJ's decision, the NLRB found that the "minimal amount of control in the context of the entire relationship between (O'Sullivan) and Hoppe" does not "warrant the conclusion that (O'Sullivan) is a joint employer of these drivers." The union has petitioned this court for review of the Board's order.
 
 
 6
 The record shows that O'Sullivan is not involved in the hiring, disciplining or discharging of drivers and has never recommended such action be taken by Hoppe. Also, O'Sullivan has no control over the wages paid to the drivers and in fact drivers are paid a flat weekly salary as provided for in the collective bargaining agreement. The Board also notes that "(m)ere membership in the Association proves nothing with respect to O'Sullivan's relationship to Hoppe or Hoppe's employees since the Association also represents members in negotiations for a unit of embalmers. O'Sullivan * * * actively participated in the contract covering the embalmers' unit and signed that contract." O'Sullivan and Hoppe are not jointly owned or managed nor have they entered into written or oral contracts.
 
 
 7
 The Board's order indicates that " 'the critical factor in determining whether a joint employer relationship exists is the control which one party exercises over the labor relations policy of the other.' " Citing, The Southland Corporation, d/b/a Speedee 7-Eleven, 170 N.L.R.B. 1332, 1334 (1968). The Board argues that this test should be used to evaluate a joint employer claim rather than the test cited in Pulitzer Publishing Co. v. NLRB, 618 F.2d 1275, (8th Cir. 1980). In Pulitzer the test applied was whether the total relationship of two nominally separate businesses reveals:
 
 
 8
 (1) some functional interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. While none of these factors, separately viewed, have been held controlling, stress has normally been laid upon the first three factors which reveal functional integration with particular reference to whether there is centralized control of labor relations.
 
 
 9
 Pulitzer, at 1279, citing, Parklane Hosiery Co., 203 N.L.R.B. 597, 612, amended on other grounds, 207 N.L.R.B. 999 (1973).
 
 
 10
 We decline the Board's invitation to modify the Pulitzer test but note that under either test the facts recited would clearly not establish a joint employer relationship. Therefore, we deny the union's petition for review of the order of the Board dismissing the complaint.
 
 
 
 *
 The Honorable WILLIAM C. HANSON, Senior United States District Judge for the Southern District of Iowa, sitting by designation